ASBURY PARK PRESS, INC., AND WAYNE D. McMURRAY,
PLAINTIFFS-APPELLANTS, v. CITY OF ASBURY PARK,
A MUNICIPAL CORPORATION, AND AARON M. GLASER,
DEFENDANTS-RESPONDENTS.

Argued June 13, 1955—Decided June 27, 1955.

*Mr. Leon S. Milmed* argued the cause for the plaintiffs-appellants (*Messrs. Goldstein & Novogrod,* attorneys).

*Mr. Milton M. Unger* argued the cause for the defendant-respondent Aaron M. Glaser (*Messrs. Milton M.* and *Adrian M. Unger,* attorneys).

*Mr. Sidney J. Meistrich* argued the cause for the defendant-respondent City of Asbury Park (*Messrs. Milton M.* and *Adrian M. Unger,* of counsel).

The opinion of the court was delivered by

BURLING, J. This is a taxpayer's action, in lieu of prerogative writ, instituted by Asbury Park Press, Inc., and Wayne D. McMurray, hereinafter called the plaintiffs, against the City of Asbury Park, a municipal corporation, and Aaron

M. Glaser, hereinafter called the defendants, to prevent the making of a lease by the City of Asbury Park to Glaser of stores situated on the Asbury Park boardwalk, owned by the municipality. The relief sought included declaration of invalidity of a municipal enabling resolution of October 26, 1954, and injunctive judgment restraining effectuation thereof. The Superior Court, Law Division, on the defendants' motion, dismissed the complaint, relying on the decision of the former Court of Errors and Appeals in *Whirl-O-Ball, Inc., v. City of Asbury Park*, 136 *N. J. L.* 316 (*E. & A.* 1947). The plaintiffs' appeal to the Superior Court, Appellate Division, prior to hearing there was certified on our own motion.

The judgment of dismissal of the complaint in the present matter was rendered on motion therefor premised on the ground that it failed to state a claim on which relief may be granted, prior to the filing of an answer, and without reception of extraneous matters by the trial court. See *R. R.* 4:12–2(*e*). Therefore it is inappropriate to refer to any facts not stated in the complaint although it appears that requests for admissions have been made and answered by the parties to the action.

The factual allegations contained in the complaint in the matter *sub judice* were stated as follows:

"3. The defendant City of Asbury Park did on October 26, 1954 adopt the following resolution:

'BE IT RESOLVED, that the Mayor and City Clerk be authorized to execute a new lease with Aaron M. Glaser for premises No. 6–8 Casino Building, Boardwalk, for period of four years, beginning January 1st, 1955, and expiring December 31st, 1958, at a yearly rental of $4,000.00, making a total rental of $16,000.00 on lease. Present lease on said premises to be cancelled as of December 31st, 1954. It being the condition of new lease that substantial improvements both interior and exterior are to be made to said premises at the expense of said Aaron M. Glaser as per sketch submitted. Said premises to be used for the sale of postal cards, toys, jewelry and novelties of all kinds. Lease to be in the usual form of Asbury Park beachfront leases.'

4. As a result of said resolution defendant City of Asbury Park is about to enter into a new lease with defendant Aaron M. Glaser whereby a letting of the premises aforementioned will commence

January 1, 1955 and will expire December 31, 1958 at a yearly rental of $4,000.00.

5. Plaintiffs aver that contrary to the statutes hereinafter mentioned no bids were asked or received by the City of Asbury Park for the letting of said premises for the new term and the new lease of four years to begin January 1, 1955 and to end December 31, 1958.

6. Plaintiffs allege that said letting was not advertised in a newspaper circulating within the City of Asbury Park at least ten days prior to receipt of bids contrary to the requirements of the statutes hereinafter mentioned, and contrary to the intent of said statutes, no notice or knowledge of the availability of said premises for letting was given to the public."

Then there followed allegations of illegality of the award of lease by Asbury Park to Glaser and prayers for the relief hereinbefore adverted to.

On the motion the defendants, admitting the facts alleged, contended that the course followed by Asbury Park was valid under the statutes of this State as interpreted in the *Whirl-O-Ball* case, *supra*. The trial judge in rendering decision on the motion, resulting in the judgment of dismissal appealed herein, held:

"* * * I am limiting it solely to that, that the Whirl-O-Ball decision controls me and that this case falls squarely within it."

In so ruling the trial court refused to rule on the plaintiffs' contentions that the municipal resolution of October 26, 1954, and the proposed lease purportedly authorized thereby were void for noncompliance with *R. S.* 40:50–1 in that they contemplated improvements to municipal property contracts which must be let on competitive bidding.

The questions involved on this appeal include: (a) whether the Asbury Park resolution to lease is invalid for lack of advertisement for bids; and (b) whether the Asbury Park resolution is violative of *R. S.* 40:50–1, *supra*, as an attempt to evade restrictions on municipal power to contract for improvements.

The danger signal of the potential for evil where public officials do not transact their business frankly and openly in the light of public scrutiny was hoisted in the following

language of Chief Justice Vanderbilt in *Driscoll v. Burlington-Bristol Bridge Co.*, 8 *N. J.* 433, 475 (1952):

"* * * they must transact their business frankly and openly in the light of public scrutiny so that the public may know and be able to judge them and their work fairly. * * *"

Mr. Justice Oliphant, in *Waszen v. City of Atlantic City*, 1 *N. J.* 272, 283–284 (1949), a case involving the compass of specifications upon which bids had been invited by advertising, said:

"The philosophy and purposes of the statutes respecting municipal contracts have been enunciated in our decisions upon numerous occasions. The law is well settled that economy must be secured and fraud, favoritism and extravagance prevented to the end that all bidders will be on the same basis in matters material to the proposed municipal action. As said in *Tice v. Commissioners of City of Long Branch, supra* [98 *N. J. L.* 214], and iterated in *Rankin v. Board of Education of Egg Harbor Twp., supra* (135 *N. J. L.* 299), 'The rule is one which is rooted deep in sound principles in public policy of general application. It should be rigidly adhered to by the courts, and not frittered away by a careless or indifferent application to specifications, that are not clear, precise and definite on all matters, that are material to the proposals, to which bidders are invited to compete. The necessity of having a common standard, and the importance of definite and precise specifications upon which to found corporate action, are too apparent to require argument.' "

Mr. Justice Eastwood observed in his opinion in the former Supreme Court in the *Whirl-O-Ball* case, *supra*, namely *Whirl-O-Ball, Inc., v. City of Asbury Park*, 135 *N. J. L.* 382, 385 (*Sup. Ct.* 1947):

"* * * We hold that it is in the public interest that leases of the type under review be awarded only after due advertisement of the proposed letting is freely circulated in the public press, and then only to the highest responsible bidder. * * *"

There exists a divergent view. In *Reade v. City of Asbury Park*, 101 *N. J. L.* 319, 321 (*Sup. Ct.* 1925), affirmed 102 *N. J. L.* 221 (*E. & A.* 1925), later alluded to, this observation was made by the former Supreme Court:

"And we think therein a clear legislative intent can readily be found, in that in dealing with such properties the interests of the city would not necessarily be best served by the price obtained, but that the method and manner of conducting such places and concessions at a high standard would be a matter of as great importance as that of revenue."

That objective may be met by specifications. Limitation of the letting of public contracts to the "lowest responsible bidder" where services are to be performed or equipment purchased, see *R. S.* 40 :50–1, *supra*, or to the "highest responsible bidder," where public property is let out to private interests, see *R. S.* 40 :61–39, does not sacrifice quality.

"The responsibility of the bidders must be found generally in the financial, engineering, business experience and competency of the bidder and his organization and it is not to be implied solely by comparison with the provisions of the specifications under which the bids were invited." *Waszen v. City of Atlantic City, supra*, 1 *N. J.*, at *page* 283.

Responsibility has been said to include experience, financial ability, machinery and facilities necessary to perform the contract. *Paterson Contracting Co. v. City of Hackensack*, 99 *N. J. L.* 260, 263 (*E. & A.* 1923) ; *Sellitto v. Cedar Grove*, 132 *N. J. L.* 29, 33 (*Sup. Ct.* 1944) ; *cf. Peluso v. Commissioners of City of Hoboken*, 98 *N. J. L.* 706, 708 (*Sup. Ct.* 1923) ; *Barber Asphalt Pav. Co. v. City of Trenton*, 74 *N. J. L.* 430, 432 (*Sup. Ct.* 1907) ; *Araneo-White, etc., Co. v. Joint Municipal, etc., Comm.*, 9 *N. J. Misc.* 243, 245 (*Ch.* 1931). Compare *R. S.* 40 :50–5.

The respondents rely upon the holding in *Peter's Garage, Inc., v. City of Burlington*, 121 *N. J. L.* 523, at *page* 528 (*Sup. Ct.* 1939), affirmed 123 *N. J. L.* 227 (*E. & A.* 1939) to the following effect :

"It is next argued that once the city advertised that it would award the contract to the lowest responsible bidder then it was obliged to do so even if advertisement was unnecessary. That is not so. We have again and again said that 'unless the statute controlled' the advertisement, specifications, opening of bids, and other formal procedure are not legally necessary or controlling on the

city. *Automatic Voting Machine Co. v. Freeholders of Bergen County, supra* [120 *N. J. L.* 264], at *page* 267; *Trenton v. Shaw,* 49 *N. J. L.* 638; *Shaw v. Trenton,* 49 *N. J. L.* 339, 12 *A.* 902."

and, from the same case (121 *N. J. L.,* at *page* 527):

"* * * that courts do not substitute their judgment for the judgment of those selected by the people and charged with the duty of acting in good faith unless a clear showing of bad faith is disclosed (*Blair v. Brady,* 11 *N. J. Misc.* 854, 857; *Cohen v. Township Committee of Hamilton Tp.,* 194 *A.* 436, 15 *N. J. Misc.* 687, 690.)"

The policy being for the Legislature, ours is the duty to interpret. The prime quest is to ascertain the legislative intent.

The question here is within a very narrow compass: was the governing body required by statute to advertise prior to the receipt of bids for use of the premises in question and make the award to the highest responsible bidder?

The manner of use by others of municipally owned land and improvements thereon has been the subject matter of effusive and prolonged legislative treatment.

■■ At the inception of this case, since the emphasis has been placed upon the status of the decision of the former Court of Errors and Appeals in the *Whirl-O-Ball* case, *supra,* we are confronted with the rule of construction that the Legislature is deemed to be conversant with its own legislation and with judicial construction placed thereon. *E. g., State v. McCall,* 14 *N. J.* 538, 547 (1954); *Barringer v. Miele,* 6 *N. J.* 139, 144 (1951). And in this respect construction of a statute by the courts "supported by long acquiescence on the part of the Legislature, or by continued use of the same language, or failure to amend the statute, is evidence that such construction is in accordance with the legislative intent." *Barringer v. Miele, ubi supra.* The *Whirl-O-Ball* case, *supra,* was decided on October 31, 1947. Less than a year later the same issue was presented in *Anschelewitz v. Borough of Belmar,* 137 *N. J. L.* 617, 620 (*Sup. Ct.* 1948), affirmed 2 *N. J.* 178 (1949). However, in

the *Anschelewitz* case, *supra,* this court found the lease in question void on other grounds and expressly stated "we do not find it necessary to pass at this time on the specific holdings of the former Supreme Court, *but they will be reserved for later consideration in appropriate cases."* (Emphasis supplied.) Under these circumstances the stated rule of construction of legislative acquiescence or failure to amend carries little weight. It does emphasize the fact this court in the *Anschelewitz* case, *supra,* in declaring the issues involved therein open, including the rationale of the *Whirl-O-Ball* case, *supra,* alerted the Legislature to prospective judicial consideration.

## The Statutes.

In the presentation of the case of the respondent City of Asbury Park we are invited to direct our attention to the following provisions of the *Revised Statutes* and as well to the laws which constituted the sources thereof: *R. S.* 40:60–42; *R. S.* 40:61–1(*g*)(*h*); *R. S.* 40:61–36 through 41, inclusive; *R. S.* 40:176–3, 4; *R. S.* 40:176–17; and *R. S.* 40:179–116. In addition our research discloses the following pertinent provisions: *R. S.* 40:60–46, 48 and 49. These various statutory provisions will be discussed so far as is deemed practicable in the order of the chronology of adoption of the source legislation.

*1900.* *R. S.* 40:179–116, *supra,* is one of several sections of a *compiled* statute carried in the *Revised Statutes* classification as *R. S.* 40:179–113 through 117, inclusive. Initially enacted as *L.* 1900, *c.* 99, this statute authorized cities bordering on the Atlantic Ocean to acquire lands "for public purposes and for places of resort for public health and for recreation and to improve the same" and to issue bonds in connection therewith. It further provided (section 4) that for the purpose of paying the principal on the bonds "and for the purpose of erecting, constructing and maintaining buildings, pavilions, roadways, walks, and for the general improvement of said public parks and places of public resort"

the commissioner of the city could lease any part of the property so acquired "for any purpose not inconsistent with the laws governing such city, as in their judgment may seem proper for the improvement of the place, and for such rental or return as they may deem for the best interest of said city * * * money received for such leases and privileges [to] first be applied in the payment of such necessary repairs and improvements in said public parks as the said commissioners may make. * * *" An amendment by *L.* 1902, *c.* 275, merely affected the bond provisions of the statute and is not pertinent herein. *L.* 1904, *c.* 86, amended the 1900 act by enlarging greatly the provisions of *section* 4, *ante*, specifying "buildings, pavilions, piers, roadways and walks," "concerts or entertainments therein by bands or otherwise" and "bathing grounds and bath-houses," but the language pertinent to leasing hereinbefore quoted was retained. A later amendment, *L.* 1919, *c.* 252, enacted after the adoption of the Home Rule Act of 1917, hereinafter discussed, in effect restored the original language of *section* 4 as herein pertinent. This is the present language of *R. S.* 40:179–116, *supra*.

*1917.* The Home Rule Act of 1917, *L.* 1917, *c.* 152, was next generally in point of time. *Article* XVIII thereof related to public lands and buildings. *Sections* 4, 10 and 11 of *Article* XVIII are pertinent. *Section* 4 authorized the governing body of any municipality to rent "to the person or persons who will pay the highest rent therefor" any portion of any building owned by the municipality "not presently needed for the use of the municipality." *Section* 10 authorized any municipality to "lease for fixed and limited terms to any person or persons any land or building of the municipality not presently needed for public use." Neither of these sections expressly required bidding or advertisement of bids although in *section* 11 such requirements were expressly enacted as to sale of land or any right or interest therein. *Sections* 4 and 10 have been combined in *R. S.* 40:60–42, *supra*, which retains the words "to the person who will pay the highest rent therefor."

*1922.* By *L.* 1922, *c.* 98, a supplement to the Home Rule Act of 1917, there was provided a means by which owners of ratables in municipalities bordering on the Atlantic Ocean might *petition* the governing body to submit to the voters a proposition "of leasing [the] public casino, play-grounds and bathing establishment" owned by the municipality, for a period not exceeding five years. It was provided that the "letting thereof shall be advertised in some newspaper * * * at least ten days prior to the receipt of bids, and shall be to the highest responsible bidder therefor." This act is contained as a *revised* statute in *R. S.* 40:60–46 *et seq., supra,* the bidding requirements above quoted being restated in *R. S.* 40:60–49. While the 1922 act is not applicable and we do not rely thereon, it indicates a legislative policy to require competitive bidding on this type of lease of municipal property.

*1925.* *L.* 1925, *c.* 248, contained as a *compiled* statute in the *Revised Statutes* as *R. S.* 40:176–15 *et seq.,* related to acquisition of land by any city bordering on the Atlantic Ocean "for public purposes and for places of resort for public health and for recreation and to improve the same." *Section* 3 (now *R. S.* 40:176–17, *supra*) authorized the governing body "to lease, rent or hire for any special term not exceeding five years any part of such property for any purpose not inconsistent with the laws governing such city, upon such terms and conditions as in their judgment they may deem proper for the improvement of the place and for the best interest of the city." *Section* 4 repealed *inconsistent* acts and parts of acts.

*1926.* *L.* 1926, *c.* 67, contained as a *compiled* statute in the *Revised Statutes* as *R. S.* 40:176–3, 4, *supra,* conferred an "additional power" on the governing body of any city having lands and buildings, "suitable for conventions, temporary or permanent exhibitions, entertainments, receptions, lectures, addresses, assemblages and other like purposes" to lease all or any portion thereof for any purposes "which in their discretion they may deem advisable, including the sale of merchandise and privileges, for a term of years not to

exceed thirty (30) years." The title of this act indicated it was to enable cities "to lease convention hall buildings and premises, including the sale of merchandise and privileges."

*1917 and 1933.* The Home Rule Act of 1917, *ante, Article XXXVI, sec.* 1 *et seq., pp.* 452 *et seq.,* of *L.* 1917, *c.* 152, authorized the governing body of any municipality to acquire and improve parks, squares, open spaces, playgrounds, beaches, water fronts and places for public resort and recreation, to construct suitable pavilions, stands, shelters and docks, wharves or piers for public recreation, and to provide musical entertainment. It also provided (in *section* 13) for the leasing of such park or place of public resort "not presently needed" for such use and for the letting out of any privilege thereat, any such letting to be after advertisement at least ten days prior to the receipt of bids, on such terms and conditions as the municipality might prescribe, and to the "highest responsible bidder." *L.* 1933, *c.* 355, consolidated the references to "public park" and "public resort," and re-enacted the bidding requirements. These provisions are now contained in *R. S.* 40:61–1, *supra.*

*1937.* By *L.* 1937, *c.* 172, it was enacted, as an "additional power" that the governing body of every municipality bordering on the Atlantic Ocean may "lease, rent or hire, the whole or any part of any public parks, recreation grounds or places of public resort, owned by it and not presently needed by the municipality for municipal purposes" for a period not exceeding five years, any such letting to be following ten days advertisement for bids and "to the highest responsible bidder." These provisions are now contained as a *revised* statute in *R. S.* 40:61–36 to 41, inclusive, *supra.* The bidding requirements are stated in *R. S.* 40:61–39 and 40.

### Intent of the Statutes.

*L.* 1926, *c.* 67, now *R. S.* 40:176–3, 4, *supra,* contained no reference to the procedural requirements to be followed by the municipality in effecting leases of municipal property. *L.* 1925, *c.* 248, now *R. S.* 40:176–15 *et seq., supra,* has

comparable status. Both of these compiled statutes must be read *in pari materia* with the Home Rule Act of 1917 and with *L.* 1933, *c.* 355, now *R. S.* 40:61–1, *supra,* which are hereinbefore detailed. *L.* 1900, *c.* 99, as amended, now *R. S.* 40:179–113 *et seq., supra,* likewise is *in pari materia.*

*R. S.* 40:179–116, *supra,* seems to be confined to letting of buildings within "public parks and places of public resort" and it may be doubted that it applies at all to store properties bordering a boardwalk *although* a boardwalk (or the beaches in the vicinity thereof) are places of public resort. The legislative intent seems to encompass concessions within park property, such as the premises which existed in *Hill v. Borough of Collingswood,* 9 *N. J.* 369 (1952). That is, purposes directly connected with recreational activities and not primarily commercial or trade purposes. This premise is borne out by comparison of *R. S.* 40:179–116, *supra,* with *R. S.* 40:176–17, *supra,* and *R. S.* 40:176–3, *supra.* The latter, *R. S.* 40:176–3, *supra,* which is confined to convention and entertainment buildings, authorizes *incidental* letting for "any" purposes deemed advisable including the sale of merchandise. The specific inclusion of merchandising purposes in this statute is evidence that its omission in the other statutes was deliberate.

Assuming that the proposed letting in the present matter is within the scope of *R. S.* 40:176–3, *R. S.* 40:176–17, or *R. S.* 40:179–116, *supra,* as to purpose it is apparent that only *R. S.* 40:179–116, *supra,* contains language from which it might be argued that general statutes relating to advertising for bids might be inapplicable. The specific expression of the phrase "and for such rental or return as they may deem for the best interest of said city," is not contained in *R. S.* 40:176–3 and 17, *supra,* and the omission must be deemed intentional.

The resolution and lease in question herein being within *R. S.* 40:179–116, *supra,* it devolves upon the court to declare whether advertising for bids is a prerequisite to a letting of municipal property thereunder. The defendants contend that *L.* 1937, *c.* 172, *secs.* 1 to 6 inclusive, incorpo-

rated in *R. S.* 40:61–36 to 41, inclusive, *supra*, which is comparable to *R. S.* 40:179–116, *supra*, in respect to the public property adverted to therein, but expressly requires bidding and advertising for bids, did not impliedly repeal the discretionary rental clause of *R. S.* 40:179–116, *supra*. The defendants' argument is premised upon the clause in *L.* 1937, *c.* 172, *sec.* 6, now contained in *R. S.* 40:61–41, reading "The power conferred" in this article "is in addition to those given" by any other law or laws. *This clause may not have such a restrictive application as is advanced by the defendants.* In approaching this question a further rule of construction will be germane, namely: "In reaching the meaning of amendatory language the court must look to the prior law, the matters deemed to require correction thereunder, and the remedy enacted." *Grogan v. DeSapio*, 11 *N. J.* 308, 323 (1953). "The courts will not construe a clause in a statute in such fashion as to charge the Legislature with deliberately rendering impotent the clear and unambiguously expressed intention of the whole act." *Grogan v. DeSapio, supra*, 11 *N. J.*, at *page* 324. Pertinent here is the reasoning expressed by me in the dissenting opinion in the *Whirl-O-Ball* case, *supra* (136 *N. J. L.*, at *pages* 322–325):

"Conceding all that is contended as to the state of the law at the time the Legislature proceeded to enact *P. L.* 1937, *Chapter* 172 'there is no safer or better settled canon of interpretation than that when language is clear and unambiguous it must be held to mean what it plainly expressed.' *Sutherland Statutory Construction*, *3d ed., Volume* 2, *page* 334.

If the plain language of the Act is to be overcome by resort to the inconsistent provision of *P. L.* 1900, *Chapter* 99 not requiring advertising, then the lucid meaning of distinct English words is rendered inert. *Inconsistent provisions cannot stand.* There should also be applied the additional canon of construction that the Legislature is presumed not to do a vain thing and enact useless legislation. It is to be assumed that the Legislature was doing more than merely restating an existing power without in any way amplifying or modifying it.

'The principle upon which subsequent legislation will operate to repeal prior legislation without any express repealing clause has been frequently considered by the courts of this state, and is well defined. Where there are two acts on the same subject, the rule

is to give effect to both, if possible. *If the two acts are repugnant in any of their provisions, the later act operates to repeal the earlier to the extent of the repugnancy.'* (Italics supplied.) *State Board of Health v. Borough of Vineland, N. J. Ch.* 1906, 72 *N. J. Eq.* 289, at *page* 290; affirmed *Err. & App.* 1907, 72 *N. J. Eq.* 862.

Stress is laid by the appellants on the necessity of giving effect to the following clause contained in the act of 1937 (*P. L.* 1937, *Chapter* 172, *R. S.* 40:61–41, *N. J. S. A.*): 'The power conferred in this article is in addition to those given by any other law or laws.'

This section has reference to the basic powers theretofore granted as distinguished from the mode or manner of the exercise of such power. The power to lease is preserved but its exercise is conditioned by the mandatory verb 'shall' in sections 39 and 40 of *R. S.* 40:61, *supra*. *Every* such municipality *may* make such a lease, but if it chooses to do so, the letting *shall* be made to the highest responsible bidder, and the letting *shall* be advertised as therein provided. \* \* \* it goes without saying that it is reasonably to be presumed that the Legislature intended to make some change in the law. The saving clause in the Act of 1937 must, on well settled principles, be given a construction consistent with the manifest policy of the enacting clause—a construction that proceeds upon the premise that the Legislature intended to do what the enacting clause provides in clear and unambiguous terms, and that language is to be given its ordinary meaning. Saving clauses and provisos and exceptions are to be strictly construed and 'all doubt should be resolved in favor of the general provision rather than the proviso or exception.' *New Jersey State Board of Optometrists v. S. S. Kresge Co., N. J. Sup.*, 1934, 113 *N. J. L.* 287; affirmed *Err. & App.* 1935, 115 *N. J. L.* 495; *Sutherland Statutory Construction, 3d ed., Secs.* 4933, 4937.

All pre-existing basic powers are preserved intact but the prior inconsistent procedural provisions must give way to those provided in the Act of 1937 as now contained in *R. S.* 40:61–36 to 41. This construction does not do violence to said section. The Act applies to municipalities bordering on the Atlantic Ocean, whether they be boroughs, townships or cities. It is presumed that the Act was aimed at good government and to prevent evils which might flow from such lettings without advertisement and public notice and to one not the highest bidder. The contention that this cloak of protection was to be thrown about all municipalities bordering on the Atlantic Ocean excepting fourth class cities is untenable. The problems of municipalities along the Atlantic Ocean are comparable, whether they be boroughs, townships or cities. Most all of them have their boardwalks, beach fronts, buildings erected with taxpayers' money, and other privileges which they let out for revenue and thus lessen the taxpayers' burden. It is illogical to conclude that fourth class cities were to be excluded from the benefits conferred by such an act upon all other seashore municipalities.

198

The 1937 Act, *Chapter* 172, is found in *R. S.* 40:61–36 to 41 and as a revised Statute under the general classification of Municipalities, Chapter 61, subtitle Public Parks and Playgrounds, under Article 3 thereof entitled 'Lease by Municipalities bordering on the Atlantic Ocean,' whereas the Act of 1900, *Chapter* 99, as amended in 1919, *Chapter* 252, is found in *R. S.* 40:179–116, but not as a revision but only as a part of a compilation under the Classification: Subtitle 13 Cities (Compilation). The provisions of the 1937 Act, *Chapter* 172 should therefore gain force and effect by virtue of such treatment in the revision, as the revision is a wholly independent enactment and supersedes all pre-existing general laws. *State v. Czarnicki, N. J. Sup.* 1940, 124 *N. J. L.* 43; *Duke Power Co. v. Somerset County Board of Taxation, Err. & App.* 1940, 125 *N. J. L.* 431, at *page* 433.

The Act of 1925, *Chapter* 248, *R. S.* 40:176–17, the second Act upon which the City also relies for its failure to advertise is found in the category of a compilation. It is generally comparable to the 1900 Act, as amended in 1919 and further in view of the history of its enactment, statements herein relating to the 1900 Act are applicable thereto."

If, however, it might be contended in the face of these determinations that there was no implied repealer of the discretionary rent provisions of *R. S.* 40:179–116, *supra,* by *L.* 1937, *c.* 172, *supra,* it is still evident that *R. S.* 40:179–116, *supra,* was impliedly amended by *L.* 1933, *c.* 355, modifying *L.* 1917, *c.* 152, *Art.* XXXVI, *sec.* 13, *p.* 455, see *paragraphs* (*g*) and (*h*) of *R. S.* 40:61–1, *supra,* and requiring such leases to be "advertised in some newspaper circulating in the municipality at least ten days prior to the receipt of bids." The defendants place reliance in this respect on *Reade v. City of Asbury Park, supra.* But the *Reade* case was decided prior to the enactment of *L.* 1933, *c.* 355, *supra,* and was succeeded by *West v. Borough of Monmouth Beach,* 107 *N. J. L.* 445, 448–449 (*E. & A.* 1931). The *West* case held that the Home Rule Act (*L.* 1917, *c.* 152, *ante*) controlled and required a borough to advertise leases for bids although the empowering statute, in that case *L.* 1909, *p.* 128, as amended by *L.* 1910, *p.* 232, did not. The *Reade* case, *supra,* held that *L.* 1919, *c.* 252, incorporated in *R. S.* 40:179–116, *supra,* was subsequent to the Home Rule Act, *ante,* and controlling whereas the *West* case, *supra,* held that the Home Rule Act was controlling where it was subsequent.

The Legislature is deemed to have cognizance of these decisions, and it deliberately enacted *L.* 1933, *c.* 355, *supra.* The enactment of the later act, of 1933, removed the effectiveness of the *Reade* case, *supra,* not only upon the reasoning of the *West* case, *supra,* but upon the strength of the same reasoning applied in the *Reade* case, *supra.* Compare the dissenting opinion in the *Whirl-O-Ball* case, *supra,* 136 *N. J. L.,* at *page* 327. Compare *Jersey City v. Department of Civil Service,* 7 *N. J.* 509, 522–523 (1951).

■ Clearly, advertising of the lease for bids was required by *R. S.* 40:61–1, *supra.* The defendants' argument is that the classification and arrangement of *L.* 1933, *c.* 355, *supra,* in *R. S.* 40:61–1, *supra,* defeats its applicability herein. There is no merit in this argument. *R. S.* 1:1–5 expressly provides:

"The classification and arrangement of the several sections of the Revised Statutes have been made for the purpose of convenience, reference and orderly arrangement, and therefore no implication or presumption of a legislative construction is to be drawn therefrom."

■ In summary, we find that advertising for bids was required under *R. S.* 40:61–1, 40:61–36 *et seq.,* and *R. S.* 40:179–116, *supra.*

## THE WHIRL-O-BALL CASE.

The defendants relied on the *Whirl-O-Ball* case, *supra,* the gist of which was that *R. S.* 40:179–116, formerly *L.* 1900, *c.* 99, *sec.* 4, as amended *L.* 1919, *c.* 252, *supra,* independently of other statutes *in pari materia,* authorized Asbury Park to lease certain boardwalk store premises owned by the municipality to Benjamin A. Cardilla, trading as Convention Hall Amusements (136 *N. J. L.,* at *page* 317). The arguments presented in this appeal have revived this issue of construction as prophesied in the *Anschelewitz* case, *supra.* The construction of the pertinent statutes hereinbefore expressed is in opposition to the construction placed on *R. S.* 40:179–116, *supra,* by the former Court of Errors and Appeals in the

*Whirl-O-Ball* case, *supra*, and we therefore conclude that it must be and is overruled in this respect.

### R. S. 40 :50–1.

The plaintiffs further contend that the proposed lease to Glaser is void for lack of advertisement under *R. S.* 40:50–1, which provides that no municipality shall enter into any contract "for the doing of any work, or for the furnishing of any materials," and so forth, "where the sum to be expended exceeds the sum of one thousand dollars, unless the governing body shall first publicly advertise for bids therefor, and shall award the contract to the lowest responsible bidder." This issue was not decided by the trial court.

█ At the trial level this question was subject to consideration and disposition. However, in view of the disposition herein made of the principal issue relative to the *Whirl-O-Ball* case, *supra*, this secondary issue is rendered moot and is not essential to our determination or the ultimate disposition of this case. It is deemed advisable to reserve this question for subsequent disposition in a matter requiring consideration thereof.

### CONCLUSION.

For the reasons expressed in this opinion the judgment of the Superior Court, Law Division, in the cause *sub judice* is reversed. The cause will be remanded to the Superior Court, Law Division, for reinstatement of the complaint and for further proceedings consistent with this opinion and with the appropriate Rules. On an appropriate motion for summary judgment on the pleadings in the Superior Court, Law Division, under *R. R.* 4:58–1, the apparent end result will be the invalidation of the municipal resolution of October 26, 1954 and of any lease entered into pursuant thereto.

*For reversal*—Chief Justice VANDERBILT, and Justices HEHER, BURLING, JACOBS and BRENNAN—5.

*For affirmance*—Justices OLIPHANT and WACHENFELD—2.