57 A.3d 567

FRANCIS CHIARELLO, APPELLANT, v. BOARD OF TRUSTEES, PUBLIC EMPLOYEES RETIREMENT SYSTEM, RESPONDENT.

Superior Court of New Jersey
Appellate Division

Argued September 19, 2012—Decided December 20, 2012.

Before Judges FISHER, WAUGH and ST. JOHN.

*John D. Feeley* argued the cause for appellant (*Feeley and Sayegh* and *The Blanco Law Firm,* attorneys; *Mr. Feeley* and *Pablo N. Blanco,* of counsel and on the brief).

*Robert H. Stoloff,* Assistant Attorney General, argued the cause for respondent (*Jeffrey S. Chiesa,* Attorney General, attorney; *Lewis A. Scheindlin,* Assistant Attorney General, of counsel; *Mr. Stoloff,* on the brief).

The opinion of the court was delivered by

FISHER, P.J.A.D.

In February 2011, appellant Francis Chiarello, a multiple member of the Public Employees' Retirement System (PERS), applied for an ordinary disability retirement from his position with the South Jersey Transportation Authority (SJTA) with the intention to remain in his other PERS position as mayor of Buena Vista Township. *N.J.S.A.* 43:15A–47.2 (Section 47.2), which ostensibly permitted a public employee to retire from one public employment position while retaining an elected office and the compensation afforded by that office,[1] was repealed by *L.* 2011, *c.* 78, § 34(d) (Chapter 78), four months after Chiarello submitted his application. In Chiarello's appeal of the PERS Board's determination that he was required to retire as mayor to obtain an ordinary disability retirement, we examine, among other things, whether a retirement application should be governed by the law existing at the time the retirement application is submitted or at the time the application is ruled upon.

The record demonstrates that Chiarello submitted his ordinary disability retirement application on February 16, 2011, seeking to retire from his SJTA position as of March 1, 2011. The application date was changed at that time, at the suggestion of a representative of the Division of Pensions and Benefits, to August 1, 2011. A few weeks later, the Division advised *N.J.A.C.* 17:2–6.1 required that, as a multiple PERS member, Chiarello "retire from

---

[1] *N.J.S.A.* 43:15A–47.2 states, in relevant part, that a PERS member "shall be eligible to retire while holding public office to which he was elected and receiving the full salary for that office if his retirement allowance is not based solely on his service in the public office to which he was elected."

employment in all covered positions" and that he be totally and permanently disabled from all job-related duties. Chiarello immediately responded that Section 47.2 permitted retention of his elected office notwithstanding his retirement from the SJTA. The PERS Board informed Chiarello it would consider his retirement application at its June 15, 2011 meeting. At that meeting, the Board decided not to process the application without Chiarello's retirement from his elected position.

Chiarello appealed, and the matter was referred to the Office of Administrative Law. After retaining counsel, however, Chiarello sought the PERS Board's reconsideration of its June 2011 decision, asserting, among other things, that Section 47.2 allowed Chiarello to retain his elected position while collecting a disability pension. The PERS Board considered this at its August 17, 2011 meeting and reaffirmed its prior denial of the application in its existing form. A final agency decision was issued on September 22, 2011, expressing the Board's view that: (1) *N.J.S.A.* 43:15A–42, which governs ordinary disability retirements, and *N.J.A.C.* 17:2–6.1, which provides guidelines for retirement applications, require that multiple PERS members terminate all such positions to be eligible to retire on an ordinary disability pension; (2) Chiarello's continued employment as Buena Vista mayor belied his claim that he was totally and permanently disabled from performing his duties with the SJTA; and (3) the Legislature, in the interim, by way of Chapter 78, repealed the part of Section 47.2 upon which Chiarello claimed his entitlement to remain Buena Vista mayor.

Chiarello filed this appeal, arguing:

I. THERE WAS NO STATUTORY BASIS FOR REFUSAL BY THE PERS TO PROCESS CHIARELLO'S APPLICATION FOR RETIREMENT BECAUSE AT THE TIME OF THE FILING OF HIS APPLICATION *N.J.S.A.* 43:15A–47.2 HAD NOT YET BEEN REPEALED.

II. CHIARELLO'S APPLICATION FOR ORDINARY DISABILITY RETIREMENT MUST BE PROCESSED BECAUSE THE REPEAL OF *N.J.S.A.* 43:15A–47.2 CANNOT BE APPLIED RETROACTIVELY TO AN APPLICATION FILED PRIOR TO ITS EFFECTIVE DATE.

■ We agree that Chiarello's retirement application should have been governed by the law existing at the time of its submis-

sion. Chiarello submitted his application prior to Section 47.2's repeal with the intent that his retirement would also occur before the repeal. It was only at the Division's suggestion that Chiarello's target retirement date was altered to a date beyond the repeal's effective date.[2] Simple fairness—let alone the well-established principle that "favors prospective application of statutes," *Gibbons v. Gibbons*, 86 *N.J.* 515, 521, 432 *A.2d* 80 (1981); *see also Landgraf v. USI Film Prods.*, 511 *U.S.* 244, 266, 114 *S.Ct.* 1483, 1497, 128 *L.Ed.2d* 229, 253 (1994); *Cruz v. Central Jersey Landscaping, Inc.*, 195 *N.J.* 33, 45, 947 *A.2d* 1228 (2008); *Rothman v. Rothman*, 65 *N.J.* 219, 225, 320 *A.2d* 496 (1974)—requires that Chiarello's ordinary disability retirement application be governed by the laws existing at the time he applied.

■ The PERS Board urges that, in enacting Chapter 78, the Legislature intended a broader reach, relying on the Legislature's declaration that the repeal of Section 47.2 would "not apply to a former member of the retirement system who was granted a retirement allowance...." From this, the PERS Board extrapolates that the Legislature intended Chapter 78 would apply to all those who had not been granted a retirement pension, including those with a retirement application pending at the time of Chapter 78's effective date, citing the following comment in a Senate statement:

> the PERS or PERS retirees who were granted a retirement allowance under those sections prior to the bill's effective date and are currently in an elective office ... may continue to receive their pension benefit and salary for the elective office.
> [*Senate Budget and Appropriations Committee Statement to Senate, Bill No. 2937* (June 16, 2011)]

Even if this description of the class of unaffected retirees represented clear evidence of a legislative intent that Chapter 78 should apply to all others, including an employee who sought but had not yet been granted a pension by the repeal's effective date, due

---

[2] The record is unclear on this point, but at oral argument counsel for the PERS Board did not dispute that the change undoubtedly occurred at the behest of the Division, not Chiarello.

process principles and notions of fundamental fairness require that we reject the outcome urged by the PERS Board. Chiarello applied for an ordinary disability retirement *four months prior* to Chapter 78's effective date. Other than the delays generated by the Division and PERS Board's misinterpretation of Section 47.2, the PERS Board has not provided evidence that the application could not have been processed prior to Chapter 78's effective date. In exercising its responsibility to administer these statutes and timely process an employee's retirement application, the PERS Board was obligated to "turn square corners." *See, e.g., County of Morris v. Fauver,* 153 *N.J.* 80, 113, 707 *A.*2d 958 (1998); *W.V. Pangborne & Co. v. N.J. Dep't of Transp.,* 116 *N.J.* 543, 560–62, 562 *A.*2d 222 (1989). When Chiarello became an employee of SJTA and when elected Buena Vista mayor, the law permitted his retirement from the former without surrendering the latter position. These laws remained unchanged when Chiarello submitted his retirement application. Due process principles and fundamental fairness compel our rejection of the PERS Board's argument that the later repeal should govern. A change in the law during a delay in the processing of the retirement application—when the delay was based on the Board's mistaken legal interpretation of existing law—should not deprive an employee of the benefits that were promised at the time he entered public employment and that remained due when he sought to retire.[3]

To hold otherwise could lead to mischievous results. Deliberate foot-dragging or other unwarranted delays in the processing of an application pending a legislative limitation on an employee's existing rights could—if we adopted the PERS Board's argument—lead to inequitable results. The PERS Board recognizes this

---

[3] Although statutory retroactivity may at times serve "entirely benign and legitimate purposes," *Landgraf, supra,* 511 *U.S.* at 267–68, 114 *S.Ct.* at 1498, 128 *L.Ed.*2d at 254, due process principles protect the individual's "interests in fair notice and repose that may be compromised by retroactive legislation" influenced by "political pressures," thereby precluding legislatures from "sweep[ing] away settled expectations suddenly and without individualized consideration." *Id.* at 266, 114 *S.Ct.* at 1497, 128 *L.Ed.*2d at 253.

pernicious potential and appropriately argues only that in determining the impact of a subsequent repeal on a pending application, a reasonable processing time should be assumed in determining whether an intervening legislative enactment should apply. That is, the PERS Board contends—because a retirement application cannot be processed and adjudged immediately upon submission—that a reasonable period of time should be added to determine the effective retirement date, which ought to be the date that fixes the state of the law applicable to the individual's retirement rights. Nothing in the legislation existing at the time of the application, or now, suggests that the Legislature intended that the scope of its laws in this arena should be governed by the speed at which retirement applications are processed, and we decline to impress such an unworkable condition on the reach of Chapter 78. For these reasons, we conclude that the repeal of Section 47.2 has no bearing on Chiarello's retirement application.

▮▮▮ That, however, does not end the matter. The PERS Board presents a technical argument that stands apart from the impact of the repeal, asserting that Section 47.2 does not—and never did—apply to *disability* retirements, which Chiarello sought here. The PERS Board argues that the statutes governing both ordinary and accident *disability* retirements appear in earlier and separate locations in *New Jersey Statutes Annotated,* i.e., *N.J.S.A.* 43:15A–42 to –46, while retirements for age are dealt with in a section that follows, i.e., *N.J.S.A.* 43:15A–47 (Section 47), and, moreover, the provision in question—Section 47.2—should, because of its numerical designation, be considered part of or dependent upon the scope of Section 47, which only governs retirements for age. There is a certain logic to that contention, but we have recognized that this approach does not illuminate the legislative intent. Indeed, the Legislature has directed, as a general matter, that the particular arrangement of statutes is "for the purpose of convenience, reference and orderly arrangement," and that "no implication or presumption of a legislative construction" should be drawn from the arrangement. *N.J.S.A.* 1:1–5; *see*

*also Asbury Park Press v. City of Asbury Park,* 19 *N.J.* 183, 199, 115 *A.*2d 564 (1955); *Levine v. State, Dep't of Transp.,* 338 *N.J.Super.* 28, 31–32, 768 *A.*2d 192 (App.Div.2001); *In re J.W.,* 44 *N.J.Super.* 216, 224, 130 *A.*2d 64 (App.Div.), *certif. denied,* 24 *N.J.* 465, 132 *A.*2d 558 (1957). The numerical assignment of statutes is directed by "the compiler of statutes in the Office of Legislative Services," and, because of *N.J.S.A.* 1:1–5, "[s]ections enumerated by decimal points and the like"—as here—"are nonetheless distinct designations (as contrasted with a subsection of a particular section) and remain separate statutory sections." *State v. DiSomma,* 262 *N.J.Super.* 375, 382, 621 *A.*2d 55 (App.Div.1993).[4]

Having concluded that due process principles and simple fairness require a consideration of Chiarello's retirement application in light of the state of the law at the time of the application, and finding no merit in the PERS Board's argument that Section 47.2 should be interpreted to apply only to age retirements,[5] we lastly turn to an issue that does not turn on statutory construction principles.

---

[4] The original version of Section 47.2 was enacted in 1985, *see L.* 1985, *c.* 414, with a preamble declaring the Legislature's intent to provide "for the terms of retirement of certain elected public officials who are members of [PERS] and supplementing *P.L.* 1954, *c.* 84," which refers to all the subsections contained in what was then *N.J.S.A.* 43:15A–1 to –86, including the prior incarnations of statutes governing ordinary and accident disability retirements. Any illumination of the legislative intent thereby provided suggests only that the Legislature meant to include *all* types of retirements within the terms of Section 47.2.

[5] In the final analysis, had the Legislature intended to limit the scope of Section 47.2 as urged by the PERS Board here, it merely had to say so. We find no principled basis to adopt the PERS Board's contentions or to otherwise deprive Chiarello of the rights that had equitably vested by the time he applied for a disability retirement. *Cf., Skulski v. Nolan,* 68 *N.J.* 179, 198, 343 *A.*2d 721 (1975) (recognizing that "even with respect to public entities, equitable considerations are relevant in evaluating the propriety of conduct taken after substantial reliance by those whose interests are affected by subsequent actions"). Nor do we find the absence of any statement regarding continuation in elected office in Section 42 as suggesting a legislative intent to prohibit such an event when an ordinary disability retirement is sought, as here.

In denying the application, the PERS Board observed that Chiarello

is claiming that he is totally and permanently disabled. Although the specific duties of the two positions differ, the basis of his disability claim may be considered to detrimentally affect his ability to perform in either position. Therefore, if at the time of filing his application he is able to continue his employment as Mayor of Buena Vista, such a fact is not supportive of his claim for total and permanent disability.

Despite recognizing this as a potential basis for denying ordinary disability retirement benefits, the Board only denied relief based on its mistaken interpretation of Section 47.2 and the impact of its repeal. Because we have concluded that the PERS Board's statutory interpretation was erroneous, we remand for consideration of the question the Board posed but did not decide: whether Chiarello could be totally and permanently disabled from his employment with SJTA while not at the same time be similarly disabled from his position as Buena Vista mayor.

Remanded. We do not retain jurisdiction.