THE STATE, ALLAN L. McDERMOTT, PROSECUTOR, v. THE BOARD OF STREET AND WATER COMMISSIONERS OF JERSEY CITY ET AL.

1. Where a city charter directs that certain paving or other work shall be awarded to the lowest responsible bidder, or to that responsible bidder who offers the terms most advantageous to the city, it is illegal to divide the work between the highest and lowest bidders.

2. It is the duty of the proper city board or officer to determine which of the bidders possesses the statutory qualifications, and then award the work to that bidder, unless they determine to reject all bids and re-advertise for the work under the city charter or the terms of. the original advertisement for bids.

On *certiorari.*

Argued at November Term, 1893, before Justices DIXON and ABBETT.

For the prosecutor, *Allan L. McDermott.*

For the defendants, *William D. Edwards.*

The opinion of the court was delivered by

ABBETT, J. · The *certiorari* in this case removed into this court for review certain resolutions and proceedings awarding contracts for asphalt paving in Jersey City, under proposals received by the board of street and water commissioners. The board advertised for bids for laying asphalt pavement,

to be paid for out of the license money collected by the city, as provided in sections 5 and 6 of chapter CXXXIV. of the laws of 1891 (*Pamph. L., p.* 259), and further provided for in chapter LXXXII. of the laws of 1893. *Pamph. L., p.* 164. Bids were received therefor from the Trinidad Asphalt Company and the Barber Asphalt Company. The work would cost $50,920 under the bid of the Trinidad Asphalt Company, and $41,982 under the bid of the Barber Asphalt Company. The board did not award the contract to either. They divided it, giving paving to the highest bidder amounting to $32,805, and giving the lowest bidder paving amounting to $13,878. The preamble to the resolution awarding portions of the work to each company declares "that the samples [of asphalt] submitted are above the standard requirements, and this board has examined into the financial standing of both bidders and finds them responsible, and as the prices bid, covering a guarantee of ten years, are advantageous to the city, and as the cost of preparation in establishing a plant to prepare the asphalt for street laying is between twelve thousand and twenty thousand dollars, it is advisable to make the contract of sufficient size as to amount of work to justify the erection of a plant, and as the laying of asphalt pavement has not been heretofore attempted in this city, and as the money to pay for the work on which bids were received is payable out of the excise moneys and not by assessment, and this board believing it to be to the best interest of the city to divide the work between the bidders, with a view of comparison of their work, inasmuch as the Barber Asphalt Paving Company has had the greater experience in laying the pavement and the Trinidad Asphalt Paving Company has had the greater experience in refining the product, as we are informed; therefore, resolved," &c. The resolution was presented to the acting mayor, on August 19th, 1893, and became operative within ten days thereafter, under section 2 of the supplement to the city charter approved March 24th, 1873 (*Pamph. L., p.* 400), he not having vetoed the same. He did not formally approve the same, but in a communication

to the board, dated August 29th, 1893, after giving his views, states, " I have decided to let the resolution stand."

Our opinion is that, under the city charter, this improvement was one that was to be borne by the city at large and paid by general tax, and that the proposed work cannot be paid for by assessment for benefits. Under the fifth section of said act of 1891, the board has " power in their discretion to repave, repair or improve, at public expense, any part of any street, lane, alley, avenue or public place already paved or that has been paved, to be paid for out of the funds raised by the issue of licenses for the sale of spirituous or malt liquors heretofore appropriated under existing laws for that purpose in such city, or which may hereafter be appropriated for that purpose in any such city under the authority conferred by this act."

There is a contention in this case as to whether or not the sections of the charter of 1871, under the title " Board of Public Works," which require the contract for paving to be made " with the lowest responsible bidder," or section 159 of the charter, under the heading " Finance," is applicable to this case, or whether the provisions of the latter section modify or affect the former provision or the proper construction thereof Section 159 provides " That no contract for work or materials shall be entered into, or purchase of personal property be made by or on account of any board or department of the city government, except after due advertisement, for six days at least, in the official newspapers; whereupon the contract shall be awarded to, or the purchase shall be made of, that responsible bidder who offers the terms most advantageous to the city."

In deciding this case, it is not necessary to determine which of these provisions are applicable, or whether there is any legal difference between the " lowest responsible bidder " and " that responsible bidder who offers the terms most advantageous to the city," or whether the board, in determining who is a " responsible bidder," is limited to the question of financial responsibility, or may broaden its field of inquiry and exclude

a bidder whose conduct in other public work or other actions would render it unwise to trust him to carry out the contract he might make.

The board did not act under either of the provisions quoted. It did not award the contract to either the lowest responsible bidder or to that bidder who offered the terms most advantageous to the city. It awarded part of the work to the highest bidder and part to the lowest bidder. The duty imposed upon the board by the charter was to determine which of these bidders on this work came within the words of the charter. They were both financially responsible, they both submitted samples of asphalt which were above the standard requirements and were both treated as bidders who, in good faith, would perform their contracts to the best of their ability, the only difference between the two being that the highest bidder had the greater experience in laying the pavement and the lowest bidder had the greater experience in refining the product. It was to one of these that the charter required the board to award the contract. The board seeks to excuse their failure to award the whole of the work to either upon the ground that they believed it to be for the best interests of the city to divide the work between them, with a view of comparing their work. The answer to this action is that no such power is conferred upon this board. Its power is limited to awarding the contract to one of the bidders, and it failed to perform that duty when it divided the work unequally, according to its discretion, between the highest and the lowest bidders. The charter having limited the power of the board as to the bidder to whom the contract should be awarded, and as to his qualifications, any departure therefrom is illegal. *Cory* v. *Freeholders of Somerset*, 15 *Vroom* 445, 455.

The board had no right to consider any requirements not set forth in the statute or in the specifications. *Shaw* v. *Trenton*, 20 *Vroom* 343. If the board could not determine which of the two was the lowest responsible bidder or which was that responsible bidder that offered the terms most advan-

tageous to the city, they could have rejected both bids and have readvertised for the work, under the same or clearer or more detailed specifications, or, if there were two classes of streets requiring different kinds of work thereon, they could have divided the work and have asked bids on the different streets.

The prosecutor is a taxpayer of Jersey City and has a right to question the legality of this action of the board of street and water commissioners. This case is not distinguishable in this respect from *Publishing Company* v. *Jersey City*, 25 Vroom 437.

The action of the board in dividing the work among the two bidders is illegal and void.