ASBURY PARK PRESS, INC., AND WAYNE D. McMURRAY, PLAINTIFFS-APPELLANTS, v. CITY OF ASBURY PARK, A MUNICIPAL CORPORATION, AND BEACH AMUSEMENT COMPANY, DEFENDANTS-RESPONDENTS.

Argued November 19, 1956—Decided December 10, 1956.

Mr. *William Novogrod* argued the cause for the plaintiffs-appellants (*Messrs. Goldstein & Novogrod,* attorneys; *Mr. William Miller,* on the brief).

Mr. *John E. Toolan* argued the cause for the defendant-respondent Beach Amusement Company (*Messrs. Toolan, Haney & Romond,* attorneys).

Mr. *Sidney J. Meistrich* argued the cause for the defendant-respondent City of Asbury Park.

The opinion of the court was delivered by

BURLING, J. In *Asbury Park Press v. City of Asbury Park,* 19 *N. J.* 183 (1955), this court held that the leasing of beachfront properties of municipalities bordering the Atlantic Ocean could only be accomplished through advertise-

ment and competitive bidding. *R. S.* 40:61–36 *et seq.* The instant case presents two of the same antagonists but the dispute centers upon whether the spirit and purpose of the bidding law was subverted or fulfilled.

Defendant Beach Amusement Company has been a tenant of the city on one of its prominent ocean properties since 1932. In 1944 the leased area was substantially increased and now represents the largest property which the city leases except for its Convention Hall. The Beach Company maintains stores, a merry-go-round and a large number of amusement devices, and is currently operating under a four-year lease which expires December 31, 1956.

It appears that the city in the past has attended to new leases in the fall of the year of expiration. Nevertheless on December 3, 1955 the Beach Company wrote a letter to the Mayor and City Council of Asbury Park requesting that "immediate action" be taken to advertise and receive bids upon a lease (commencing January 1, 1957) for the premises in question. The urgency was based upon the desire of the Beach Company to secure its present position before investing in "thousands of dollars of new equipment" (said to be an annual necessity) and a "very expensive" air cooling system.

The request was taken under advisement and on December 27 the city council passed a resolution authorizing the City Manager to advertise for bids. On December 29 the advertisement appeared in the Asbury Park Press. Bids were to be received on January 9 following, at 11 A. M. Specifications were available in the meantime from the city clerk. The right to reject any bid was reserved.

The sole bid was received from the Beach Amusement Company. Two other persons called for specifications but we know nothing more of this unexplored fact. The Beach Company offered to pay a rental of $37,500 annually, which represented an increase of $3,500 over its present rental. The city council deferred action on the sole bid at its meeting of January 10, 1956, but on January 24 the offer was accepted by resolution.

The complaint charged a frustration of the bidding laws by the city in awarding the lease to the Beach Company and asked that it be declared void. The action of the city was alleged abusive of the bidding laws and municipal discretion in several alleged respects. The city offices were closed on five days of the 11-day period between the advertisement and receipt of bids, thus unduly restricting prospective bidders from obtaining the specifications and a copy of the lease; the length of time between the public advertisement and receipt of bids (ten days—the statutory minimum) did not give prospective bidders a sufficient opportunity to seriously consider an investment of such proportion; the unannounced departure from past custom of awarding leases in the fall of the year of expiration served to chill the potential market.

Plaintiffs took depositions of the mayor, city manager and one of the councilmen. Defendants moved for summary judgment with supporting affidavits and plaintiffs filed a cross motion therefor. The trial court granted the former and denied the latter, holding that in the absence of a charge of dishonesty, fraud, bad faith or willful lack of discretion the municipal action could not be attacked. He found no violation of the bidding statute, *R. S.* 40:61–39 and 40. Plaintiffs filed a notice of appeal with the Superior Court, Appellate Division, and we certified the cause prior to a review below.

It would not have been wholly unreasonable to anticipate that the City of Asbury Park, following this court's decision in the *Asbury Park Press* case, *supra,* would have taken steps to achieve the real purpose and spirit of the bidding laws rather than proceed with a mere technical compliance, a lip service to form only and putting to one side any calculated endeavor to encourage competitive bidding which would have enhanced the possibility of obtaining the best return on public-owned property.

The bidding laws, whether for the purchase of goods and service or for the lease of municipal property, lay down a principle of the market place designed to be in the best

interests of the public—competition. Competition cannot exist in a vacuum and therefore the one aim of every municipality in the fulfillment of the bidding laws should be to encourage competition. *Paterson Contracting Co. v. City of Hackensack*, 99 *N. J. L.* 260, 264 (*E. & A.* 1923). This is a state policy, *Sellitto v. Cedar Grove Township*, 133 *N. J. L.* 41, 42 (*Sup. Ct.* 1945), announced by statute and required of every municipality which it affects.

Of course, one cannot be so pretentious as to predict what might have been. Yet the courts have always been responsive to situations where the policy of the statute has obviously been thwarted. For instance, ambiguous specifications may stifle the competitive element, *Tice v. Commissioners of City of Long Branch*, 98 *N. J. L.* 214 (*E. & A.* 1922); *Waszen v. City of Atlantic City*, 1 *N. J.* 272 (1949), and specifications which are excessively weighted to favor a particular bidder may lead to the same undesirable result, *Rankin v. Board of Education of Egg Harbor Twp.*, 135 *N. J. L.* 299 (*E. & A.* 1947); *cf. Summer Cottagers' Ass'n of Cape May v. City of Cape May*, 19 *N. J.* 493 (1955). Arbitrary rejection of favorable bids also works to undermine a realization of the legislatively declared policy. *Paterson Contracting Co. v. City of Hackensack, supra; Sellitto v. Cedar Grove*, 132 *N. J. L.* 29 (*Sup. Ct.* 1944).

█ The inference which attends a municipal barricade to the policy of competition, unfortunate in many instances, is one of corrupt motive, but the absence of such motive does not preclude judicial remedy. *Paterson Contracting Co. v. City of Hackensack, supra*, 99 *N. J. L.*, at *page* 263; *Sturr v. Borough of Elmer*, 75 *N. J. L.* 443, 446 (*Sup. Ct.* 1907); *cf. Summer Cottagers' Ass'n of Cape May v. City of Cape May, supra*, 19 *N. J.*, at *page* 501. In the latter case Mr. Justice Heher noted that municipal action could be vacated where it amounted to a fraud on the bidding statute even in the presence of good faith.

Here, as recognized by the trial court, there is no charge of dishonesty. However, there is much reason to believe that implementation of the policy of competitive bidding was

not uppermost in the minds of the city officials, and this based upon their own testimony *via* depositions.

The mayor, for instance, conceded that the problem of purchasing new equipment and structural alteration was not an uncommon concern among the boardwalk tenants as a whole, and considerable doubt thus envelops the request of the Beach Company, to have the city council take "immediate action" on a lease to become operative more than a year in the future, coming at a time at variance with prior custom in the midst of an ensuing holiday period. The Beach Company laid much stress on the proposed installation of a "very expensive" air cooling system as justifying an earlier settlement of its future status, but at the oral argument we were informed that this would only approximate $3,500, whereas the purchase of new amusement devices necessitates the expenditure of "thousands of dollars" each year, an item which has in the past awaited the award of leases in the fall of the year of expiration.

The mayor first questioned and then flatly denied that it would have been advantageous to the city to allow more time for the receipt of bids or to engage in more extensive advertising. The fact that the Beach Company was paying an increased rental on the new lease was sufficient indication to the municipal authority that a fair return was obtained, although no one apparently knew or cared to inquire of the value the premises had to the lessee aside from its bid.

The courts will not infiltrate the realm of business judgment which resides in the municipal officials. Our responsibility is well-defined. See *Peter's Garage, Inc. v. Burlington,* 121 *N. J. L.* 523, 526–527 (*Sup. Ct.* 1939), affirmed *per curiam,* 123 *N. J. L.* 227 (*E. & A.* 1939); 2 *McQuillin on Municipal Corporations* (*3d ed.* 1949), *sec.* 10.33. The absence of a *bona fide* endeavor to fulfill the purpose of the bidding laws may not escape judicial cognizance under the guise of business judgment, however.

There is strong indication here that a wholesome atmosphere designed to encourage competitive bidding was not present, yet the state of the proofs leaves the entire

matter in a dilemma. The depositions tend more to support than deny the charge that the policy of the bidding laws was subverted. Much of the plaintiffs' case has not been developed, e. g., the status of the two persons who called for specifications but entered no bids, the allegations that many potential bidders were in Florida and the suggestion that a larger period of notice was essential to enable fair opportunity to investigate and appraise the business venture. A final determination at this time would be premature.

Motions for summary judgment are granted with caution, and we question the propriety of entering such a judgment in this case, believing that a more complete exposé of the facts and circumstances should be undertaken to satisfy the court that it will make a correct determination of the question of law presented. The fact that all parties moved for summary judgment does not require a different course. Cf. *Begnaud v. White*, 170 *F. 2d* 323 (6 *Cir.* 1948); *Steinberg v. Adams*, 90 *F. Supp.* 604 (*D. C. S. D. N. Y.* 1950).

The judgment will be reversed and the cause remanded for plenary hearing. Costs will abide the event.

*For reversal and remandment*—Chief Justice VANDERBILT, and Justices HEHER, BURLING and JACOBS—4.

*For affirmance*—Justices OLIPHANT and WACHENFELD—2.