IRVING GREENBERG, PLAINTIFF-APPELLANT, v. DONALD FORNICOLA, KENDALL H. LEE, *ETC., ET AL.*, DEFENDANTS-RESPONDENTS.

Superior Court of New Jersey
Appellate Division

Argued December 5, 1960—Decided January 17, 1961.

Before Judges Goldmann, Foley and Collester.

*Mr. George S. Skokos* argued the cause for plaintiff-appellant.

*Mr. Charles Frankel* argued the cause for defendant-respondent Donald Fornicola.

*Mr. Felix A. De Sarno* argued the cause for defendants-respondents Kendall H. Lee and City of Asbury Park.

The opinion of the court was delivered by

FOLEY, J. A. D. Plaintiff in a taxpayer's suit appeals from a summary judgment entered on motion of the defendants in the Chancery Division.

The essential facts as displayed by the affidavits offered by the respective parties on the motion were not in dispute. Pursuant to the provisions of *R. S.* 40:179–113 *et seq.* the City of Asbury Park had erected a pavilion on the Boardwalk consisting of bathing facilities and six stores, known as the Fourth Avenue Pavilion. In order to secure tenants for the stores, the city caused legal advertisements to be inserted in authorized newspapers inviting competitive bidding for the leasing of same for either a five-year or a ten-year term. Originally the advertisements specified the class of goods or merchandise which could be sold in each store and the services which could be performed therein. The use specified for No. 1105 Boardwalk and for No. 1103 adjacent thereto was "First Class Confectionery, Manufacture and sale, Also Soda Fountain." When the City received no response to its invitation to bid in accordance with these specifications, the legal notice in subsequent advertising was supplemented to provide:

"The bidder will be permitted to submit an offer for some other line of business suggested by the bidder, subject to the approval of City Council."

On May 12, 1959 defendant Fornicola submitted a bid for a 10-year lease of No. 1105 Boardwalk, the store to be used for the sale of frozen desserts, ice cream, soft drinks and milk products. The bid was accepted and, pursuant to a resolution of the council, a lease was executed on May 26, 1959 providing for such use "and for no other purpose whatsoever." Shortly thereafter the city received a bid for No. 1103 Boardwalk proposing "frozen custard, orange drink and amusements." At the direction of the city the defendant Lee, its municipal manager, negotiated an arrangement with Fornicola by which the latter waived

his right to sell frozen custard, providing that he be permitted to sell sandwiches and cakes. This was approved by the governing body and by letter of July 1, 1959 Fornicola was given permission to sell cold sandwiches, cake, pie and coffee. About two weeks thereafter the council also granted permission to Fornicola to sell frankfurters and hamburgers. These modifications in the use of the leased premises purportedly were effected in accordance with various clauses in the lease which reserved to the city the right to determine the kind and character of goods to be sold in the store.

Finally, by a resolution adopted March 8, 1960 by the governing body, an *addendum* to the lease was executed permitting sale of the following items of goods:

"ice cream, drinks (soft), milk products, cold sandwich platters, cakes, pies, and coffee, frankfurters and hamburgers, and for no other purpose whatsoever."

The complaint, filed on August 6, 1959, was based entirely upon the allegations that the approval of the changes in use particularized in the lease had not been "publicly advertised for open bids by the City Manager of the City of Asbury Park" and that the Mayor and Council of Asbury Park had not "adopted a resolution in legal manner, permitting such change." The relief sought by the plaintiff was that (a) Fornicola be restrained from selling any products other than those described in the lease as originally executed; (b) the defendant Lee be required to "enforce the lease provisions"; (c) the city be enjoined from permitting Fornicola to violate the lease provisions by selling products not originally specified therein. The pretrial order, which became a part of the record for the purposes of the motion for summary judgment, adopted by reference the legal issues involved in the proceeding as drafted in paragraph No. 7 in plaintiff's pretrial memorandum. They follow:

"7. Can the City of Asbury Park permit a tenant of leased premises to vary the terms of his lease by letter or resolution, and not in accordance with re-advertisement and public bidding; damages."

The argument on the motion was contained within the boundaries of the inquiry of whether the bidding statutes hereinafter referred to, required public advertisement of the proposed changes in, and extension of, the uses specified by Fornicola in his bid, and incorporated in the lease executed by the parties. In granting the motion the trial court held that had the invitation to bid specified a particular use and Fornicola's bid been based thereon, a subsequent change in use without readvertisement would have been in violation of the statutory mandate; but since the invitation granted to all bidders equally the right to propose the use for which the bids were made, the use granted, once the highest bid was accepted, was subject to change under the general provisions of the lease, reserving to the city "control over the merchandise and the facilities within the leased premises."

On this appeal plaintiff challenges the soundness of this ruling. Additionally, plaintiff raises for the first time a question of deeper implications, namely: did the advertisement, which permitted the bidders to specify the proposed use of the premises, comply with the requirements of the bidding statutes?

Ordinarily this court on appeal will not entertain argument of an issue which was not raised in the lower court. However, an exception to the general rule exists where a question of public policy is present. *Howard v. Mayor and Board of Finance of City of Paterson*, 6 *N. J.* 373 (1951); *State v. Taylor*, 5 *N. J.* 474 (1950); *Wagner v. Borough of Lodi*, 56 *N. J. Super.* 204 (*App. Div.* 1959), certification denied 30 *N. J.* 599 (1959). We find this to be such a case for reasons which will shortly appear.

It is now settled that the erecting and leasing of waterfront improvements as provided by *R. S.* 40:179–116 is subject to the requirement of *R. S.* 40:61–1(*h*) (Munici-

palities generally) that the lease be awarded "to the highest responsible bidder therefor, after advertisement of the time and place of such letting, at least ten days prior to the receipt of bids, in a newspaper circulating in the municipality, and upon such terms and conditions as it may prescribe," as well as the mandate of *N. J. S. A.* 40:61–36 *et seq.* (Municipalities Bordering on the Atlantic Ocean) that such leases "shall be to the highest  *  *  * bidder therefor," *R. S.* 40:61–39, after advertisement of the proposal at least ten days prior to the receipt of bids. *R. S.* 40:61–40. *Asbury Park Press v. City of Asbury Park,* 19 *N. J.* 183, 199 (1955).

██ As was pointed out in *Hillside Tp., Union County v. Sternin,* 25 *N. J.* 317, 322 (1957), statutes which require competitive bidding are for the benefit of taxpayers and not the bidders, should be construed with sole reference to the public good, and should be rigidly adhered to by the courts. See also *Tice v. Commissioners of City of Long Branch,* 98 *N. J. L.* 214 (*E. & A.* 1922); *Rankin v. Board of Education of Egg Harbor Tp.,* 135 *N. J. L.* 299 (*E. & A.* 1947). The primary objective of such statutes is to encourage competition for the benefit of the public purse. *Weinacht v. Board of Chosen Freeholders of County of Bergen,* 3 *N. J.* 330, 333 (1949). Basic in the service of this purpose is the necessity of having a common standard and definite and precise specifications upon which to found corporate action. *Waszen v. City of Atlantic City,* 1 *N. J.* 272, 283–284 (1949). With respect to the scope of the specifications the court noted in *Hillside Tp., Union County v. Sternin, supra,* that:

"The conditions and specifications must apply equally to all prospective bidders. Otherwise, there is no common standard of competition. Every element which enters into the competitive scheme should be required equally for all and should not be left to the volition of the individual aspirant to follow or to disregard and thus to estimate his bid on a basis different from that afforded the other contenders." 25 *N. J.,* at *pp.* 322–323.

The rationale of the *Hillside Tp.* case was affirmed in *Fereday & Meyer Co., Inc. v. Elizabeth Board of Public Works,* 27 *N. J.* 218, at *p.* 223 (1958) wherein the court said:

"The specifications must set up a common standard of competition and must 'supply such information as will afford all bidders a fair and reasonable opportunity for competition and enable them to bid intelligently.'"

And in *Belousofsky v. Board of Education of City of Linden,* 54 *N. J. Super.* 219, 223 (*App. Div.* 1959), in following the reasoning of *Hillside Tp., Union County. v. Sternin, supra,* we reiterated that "the two paramount aims of such statutes are that all bidders bid upon the same thing, and that the public know clearly what the bidder must give and the municipality receive, for a consideration plainly stated."

In the present case, granting to the individual bidder the right to propose specifications of use satisfactory to him, but unknown to his competitors, patently subverted the purposes of the bidding statutes as they have been defined in the cases cited hereinabove. It was not enough that the bidders be given equal opportunity to bid, it was required also that each be permitted to bid on the basis of the same offer. Unequivocal identification of subject matter is inherent in a common standard and necessarily must be fixed by the municipality by means of definite and unmistakable specifications.

Obviously the value of a lease is dependent upon the income which the lessee may be expected to derive therefrom. The income is in turn dependent upon the uses to which the demised premises may be put. Implicit in any concept of competition is the idea that the competitors know what they are competing for. Thus, when a municipality seeks competitive bids for the leasing of premises, the use to which the premises may be put is an integral part of the competitive scheme which directly affects the amount of the bids.

Moreover, the failure of a municipality to specify a com-

mon standard deprives the public of its right to an award by the governing body which, when laid against the proposal, dispels any notion that the municipal action may have been tainted by ulterior motivation or favoritism, resulting in the public's receiving less than was rightfully its due in the circumstances.

We conclude that the surrender by the city of its statutory duty to advertise for open bidding in accordance with specifications of use providing common standards by which (a) all bidders might with complete equality compute their bids, and (b) such bids could be fairly and intelligently evaluated by the city, was in contravention of the fundamental purposes of the bidding statutes and consequently in clear violation of the public policy therein expressed. It follows, of course, that any subsequent contractual undertaking by the city which had as its genesis such unauthorized exercise of authority was likewise offensive to public policy. We are, therefore, constrained to hold that the lease between the city and Fornicola is void.

In view of this holding it is evident that the question of whether the parties might by mutual agreement make changes in the uses provided by a valid lease, without public notice or readvertising, becomes moot.

The judgment is reversed and the cause remanded to the Chancery Division for proceedings not inconsistent with this opinion.