IRVING GREENBERG, PLAINTIFF-RESPONDENT, v. DON-
ALD FORNICOLA, KENDALL H. LEE, ETC., *ET AL*,
DEFENDANTS-APPELLANTS.

Argued December 19, 1961—Decided March 5, 1962.

*Mr. Felix A. De Sarno* argued the cause for defendants-appellants Kendall H. Lee and City of Asbury Park.

*Mr. Charles Frankel* argued the cause for defendant-appellant Donald Fornicola.

*Mr. George S. Skokos* argued the cause for plaintiff-respondent.

The opinion of the court was delivered by

WEINTRAUB, C. J. The Appellate Division held that a lease from the City of Asbury Park to defendant Fornicola was void for failure to comply with the law relating to competitive bidding. 65 *N. J. Super.* 104 (1961). We granted certification. 36 *N. J.* 28 (1961).

Under the lease the premises were to be used "for the sale of frozen desserts, ice cream, drinks (soft) and milk products." Subsequently the lease was amended to exclude "frozen desserts" and to substitute therefor "cold sandwich platters, cakes, pies, coffee, frankfurters and hamburgers."

Plaintiff also held a lease from the city of premises some 500 feet away. His lease permitted the sale of frankfurters and hamburgers. Deeming defendant's sale of these products to compete with his business, plaintiff, as a taxpayer, sued

to compel the city to enforce the Fornicola lease as originally drawn. On cross-motions for judgment, the trial court found for the defendants.

Upon appeal to the Appellate Division plaintiff initiated the further claim that the lease to Fornicola was void because of noncompliance with the bidding statute. The Appellate Division accepted the new issue. Thus a suit to compel performance of a lease became one to void it.

Our practice permits an appellate court to notice plain errors affecting substantial rights of a party, although they were not brought to the attention of the trial court. *R. R.* 1:5–3(c). In *Howard D. Johnson Co. v. Township of Wall,* 36 *N. J.* 443 (1962), we said:

"\* \* \* Unquestionably, this authority of an appellate court will not be casually invoked. The rule does not contemplate that litigation shall be routinely rerun to explore all questions which may conceivably be involved. \* \* \* But where upon the total scene it is manifest that justice requires consideration of an issue central to a correct resolution of the controversy and the lateness of the hour is not itself a source of countervailing prejudice, the appellate court may accept the question and indeed itself raise it, as on occasions we have."

The Appellate Division acted under this residual power to do justice. The difficulties here are twofold. First, the new issue was foreign to what was tried below, and hence a record was not developed in the light of it. Second, sight seemingly was lost of the principle that attacks upon public contracts must be seasonably made. See *Robbins v. City of Jersey City,* 23 *N. J.* 229, 237–239 (1957); *Summer Cottagers' Ass'n of Cape May v. City of Cape May,* 19 *N. J.* 493 (1955); *Travis v. Borough of Highlands,* 136 *N. J. L.* 199 (*Sup. Ct.* 1947).

An action to contest the lease should have been brought at least within 45 days. *R. R.* 4:88–15(a). Subparagraph (c) of that rule provides the court may enlarge the period "where it is manifest that the interests of justice require." Here the lease was first challenged in a brief filed 14 months after it was made. The transaction had

been fully publicized. The authority to lease is not disputed, and the city had sought to comply with the bidding statute. Thus the issue is not one of power to act. See *Oldfield v. Stoeco Homes, Inc.,* 26 *N. J.* 246, 262 (1958). Nor is corruption alleged. Rather, plaintiff projects at best a debatable question concerning the sufficiency of specifications. It may be doubted that an original suit so long after the event would be entertained except upon a moving explanation of the delay and a demonstration of the fairness of a quarrel at so late an hour.

Defendants, however, do not complain, and the matter having reached the present stage, we will accept this additional issue.

I.

For the reasons we have stated, the record is not too satisfactory. We gather these facts: In the spring of 1959, the city erected a pavilion on its boardwalk, consisting of bathing facilities and six stores, at the approximate cost of $450,000. The city advertised for bids for the stores as it was required to do by *N. J. S. A.* 40:61–36 to 40. *Asbury Park Press, Inc. v. City of Asbury Park,* 19 *N. J.* 183 (1955); *Asbury Park Press, Inc. v. City of Asbury Park,* 23 *N. J.* 50 (1956). The city also communicated directly with leading restaurant operators to excite their interest in the proposals.

The initial approach was to specify the class of goods to be sold in each store. Some seven advertisements of specifications so phrased were unproductive. The city then amended the specifications to provide that:

"The bidder be permitted to submit an offer for some other line of business suggested by the bidder, and subject to the approval of the City Council."

Fornicola submitted a bid in which he specified the products to be sold. We gather he was the sole bidder for the store in question. An award was made and a lease executed.

■ Competitive bidding is designed to obtain the best economic result for the public. *Weinacht v. Board of Chosen Freeholders of County of Bergen,* 3 *N. J.* 330, 333 (1949). Inherent is the requirement that the public body shall prescribe a common standard on all matters that are material to the proposals, to the end that interested persons may bid intelligently and will be induced to bid by the promise of impartiality which only specifications of that quality can give. *Tice v. City of Long Branch,* 98 *N. J. L.* 214, 215 (*E. & A.* 1922); *Waszen v. City of Atlantic City,* 1 *N. J.* 272, 283–284 (1949); *Township of Hillside, Union County v. Sternin,* 25 *N. J.* 317, 322 (1957); *Fereday & Meyer Co. v. Board of Pub. Works of City of Elizabeth,* 27 *N. J.* 218, 223 (1958).

The Appellate Division found the provision permitting a bidder to suggest a line of business enabled each bidder to fix his own standard, thus violating the principles we have set forth. It said the rental value of premises depends upon the use to which they are put, and hence there was no "common standard" for the bidding. We agree, of course, that the nature of the authorized use may affect rental value, but we are unable to agree that a common standard is lacking when all bidders have the common right to suggest the use, notwithstanding that the right to disapprove is reserved.

A prospective tenant knows what business he wants to conduct. He starts with that interest and seeks a place to further it. If the location appeals to him, he is concerned with the amount of space and the length of the term; and if the space and term are specified, he is able intelligently to submit an offer.

Restrictions upon use of course may affect the bidding. Perhaps, analytically, they so operate by way of limiting the number of persons who are interested rather than by altering the common standard, *i. e.,* space and term. At any rate, the question is whether they are legally permissible, and if so, whether they may take the form the municipality here employed.

Although limitations upon use tend to reduce the likelihood of the greatest dollar yield, yet a prudent owner cannot be indifferent to the use of his property. Some uses may injure or degrade the premises or impair the return from the remainder of the property. And in special circumstances the owner may wish only a particular use, to further another interest he has in the total scene, even though that use may not attract the highest rent. Thus, for any of the suggested reasons, good management may dictate that the owner accept something less than the best return.

We think it clear the Legislature did not intend to deny to the municipality the right thus to protect its total interest by suitable restrictions upon use. *R. S.* 40:61–37 expressly authorizes a letting "upon such terms and conditions as it [the municipality] may prescribe." This provision is not as explicit as, for example, the provision of another statute, not here involved, which authorizes a municipality to lease "to the person who will pay the highest rent therefor, for any use not detrimental to such building or the use of the remainder by the municipality," *R. S.* 40:60–42, but we have no doubt the statute here involved embraces the same thought.

Plaintiff argues, however, that a limitation upon use is compatible with the bidding statute only if the acceptable uses are specified in the proposal for bids, and hence a proposal for any use, subject to disapproval, violates the statutory policy. The statute does not express that distinction, and we should not find it by implication unless the sense of the situation so requires.

A private owner would hardly take the route urged by plaintiff. He would not limit his opportunity for the highest return by divining in advance the particular uses he would consider to be appropriate. Rather he would welcome all offers and then decide whether the highest should be refused because of some disadvantage in the use proposed. The soundness of that course is illustrated by the experience in this case. The original plan for bids for predetermined

uses evoked no response, whereas the broader approach proved productive. The broader approach is well calculated to achieve the highest bid, the very aim of the bidding statute. It thus comports with the statute unless it is so beset with the prospect of evil that we must find incompatibility on that account.

The bidding statute seeks to prevent a predetermined result for a favored bidder. We see no special prospect of this evil in a proposal for bids for any use, subject to disapproval. Indeed, the specification by the public body of a particular use can more readily be turned to an improper end, for the more specific the use, the fewer will be the interested parties. Here, as in other settings, undue specificity can be the vehicle for favoritism. See, for example, *Waszen v. City of Atlantic City, supra* (1 *N. J.* 272); *Shore Gas & Oil Co. v. Borough of Spring Lake,* 27 *N. J. Super.* 33 (*App. Div.* 1953). True, a reserved right to reject could be exercised invidiously, but overall the opportunity to reach a preconceived result is much narrowed, for if the highest bid should be refused, the public body would be under the compulsion of public opinion and judicial review to give a tenable reason for accepting less. Hence when all bids are in, it is easier to detect a corrupt motive than when the attack is upon specific limitations contained in the specifications. For these reasons an interested person would not be dissuaded from bidding because of a fear that the contest has been rigged.

We do not say that a municipality may not specify in advance the uses it will permit. It doubtless may do so if under the circumstances that course is reasonable. Rather we hold that an open proposal, subject to disapproval as to use, is not incompatible with the bidding statute.

It may well be that the reservation here could have been more explicit. For example, it might well have expressed the basis for rejection, *i. e.,* if the use is injurious to the demised premises, or prejudicial to the interest of the city in its remaining property, or incompatible with the pur-

poses of a boardwalk pavilion. Perhaps a standard of that nature is implicit and would be judicially inferred. At any rate, we are not inclined, at this late date, to consider the degree of perfection which the city could have achieved in its phrasing of the reservation. No bid was in fact rejected, and the likelihood that any bid was deterred is too remote to warrant upsetting a completed transaction.

## II.

This brings us to the issue advanced in the complaint, upon which the Appellate Division expressed no view because of its holding that the lease was void.

Plaintiff does not charge bad faith, arbitrariness or improvidence. Rather he presses only a proposition of law, to wit, that the bidding statute forbade any modification or relaxation of the terms of the lease. Expressed otherwise, plaintiff contends the product of competitive bidding is immutable, and that if the parties wish a modification, they must rescind the lease and submit the subject anew to competitive bidding.

The undisputed facts are these: After the lease was executed, the city received a bid for another store in the pavilion, the purpose of the bidder being to sell frozen custard. The practical impediment was the authority in the Fornicola lease for the sale of "frozen desserts." The city asked Fornicola to agree to delete "frozen desserts" in exchange for permission to sell cold sandwich platters, cake, pie and coffee. Fornicola agreed. Later, but prior to formal approval by the Council, Fornicola was permitted also to sell hamburgers and frankfurters, under circumstances we will presently relate. The amendment of the lease as formally approved included these additional items as well.

Quite obviously it would not be feasible to say the city's right to meet an unanticipated need is conditioned upon a tenant's willingness to risk the result of new bidding.

The city was the moving party. Fornicola was agreeable to the change upon his evaluation of its economic worth. It would have been foolish of him to jeopardize his investment and business to accommodate the city. The goal of the bidding statute is not impaired when the public body in its own interest seeks an amendment to meet an unanticipated development in circumstances in which new bidding would be inappropriate or impractical. See *Home Owners Const. Co. v. Borough of Glen Rock*, 34 *N. J.* 305, 315 (1961). It would be unreasonable to construe the act to deny to the municipality an opportunity to bargain for a needed change.

So much of the amendment as relates to hamburgers and frankfurters presents a different problem, if we assume, as the record suggests, that permission to sell them was not part of the bargained consideration. It appears that the city suggested that Fornicola handle those delicacies to meet the complaint of visitors and city employees that they were not available at the pavilion. We gather the nearest place they could be bought was beyond a public street and the city's ordinance forbade anyone to cross the street in bathing attire. The question then is whether the city may relax a restriction upon use to obtain a service the city wishes to be provided.

A municipality may deal with its contracts in the same manner as a natural person in the absence of statutory or constitutional limitation. *Carlin v. City of Newark*, 36 *N. J. Super.* 74, 92–93 (*Law Div.* 1955). Here the restriction upon use was not a term of the bidding specifications, and hence the case is unlike *Vaccaro v. Asbury Park Enterprises*, 42 *N. J. Super.* 288 (*App. Div.* 1956), where lands were sold upon the condition that a structure of specified type be erected and then, without any justification (see *Oldfield v. Stoeco Homes, Inc., supra* (26 *N. J.* 246, 261)), the city permitted a change which would have materially altered the basis upon which bids had been submitted. So far as the present record goes, any inter-

ested party could have bid for the store upon a proposed use which would have embraced all of the items Fornicola was later permitted to sell. Since the restricted use here was not part of the specifications upon which all bidders had to bid, the restriction was simply a restraint imposed by the city to protect its continuing interest as owner. The city accordingly could relax the restriction to serve its own ends without generating an issue under the bidding law.

We appreciate that an amendment of the lease, as distinguished from a grant of revocable permission to sell hamburgers and frankfurters, could prejudice the city if one of the other stores should become vacant during the term of the Fornicola lease. Whether the city is irrevocably bound is not crucial and hence we need not explore that question. For the present case it is enough to hold the city could grant such permission and hence could not be compelled to enforce the restriction contained in the lease.

The judgment of the Appellate Division is accordingly reversed and the judgment of the trial court is affirmed.

FRANCIS, J. (dissenting). The majority opinion argues persuasively for the legality of the amended lease under attack. But we are not dealing with a private property owner endowed, as he is, with an almost unlimited freedom of contract. *Lieberman v. Neptune Tp.*, 50 *N. J. Super.* 192, 198 (*App. Div.* 1958). We are concerned solely with a municipal corporation whose power to demise the premises in question is circumscribed by specific legislation. *N. J. S. A.* 40:61–36 to 40.

The Legislature has decreed that any letting of this store shall follow advertisement for bids, and shall be granted to the highest responsible bidder. *R. S.* 40:61–39 to 40. The requirement for competitive bidding, designed as it is to secure competition and to guard against favoritism, improvidence, extravagance and corruption, is rooted deep in sound principles of public policy. It is in the highest degree mandatory and represents a deliberate decision on the part

of the lawmaking branch of our government to deprive contract-making municipal officials of discretion, or to limit their discretion, in areas susceptible to the abuses mentioned.

No one can doubt that the statutory scheme is a wholesome rule of public policy, or that its high purpose is to afford maximum protection to taxpayers. Consequently, in its administration by the courts the sole reference must be to the public interest, which can be safeguarded only by a demand for strict compliance. *Hillside Tp., Union County v. Sternin,* 25 *N. J.* 317 (1957); *Asbury Park Press v. City of Asbury Park,* 19 *N. J.* 183, 188 (1955); *A. C. Schultes & Sons v. Haddon Twp.,* 8 *N. J.* 103, 108 (1951).

Where competitive bidding is necessary and, as is usually the case, the terms and specifications of the work to be done or the article or property to be bought or sold or leased are set forth in the public advertisement, the bids submitted must conform to the terms and specifications. Any material departure invalidates the bid. Moreover, after the conforming lowest bid (or the highest, in the case of the lease of property) is accepted, the *contract* entered into between the municipality and the bidder must likewise match the terms and specifications. Any *material* change or departure therefrom vitiates the agreement. Where the variance is substantial, advantage to the bidder or to the municipality is immaterial; the same result must follow. *Hillside Tp., Union County v. Sternin, supra; McDermott v. Jersey City,* 56 *N. J. L.* 273, 276 (*Sup. Ct.* 1893); *Shaw v. Trenton,* 49 *N. J. L.* 339 (*Sup. Ct.* 1887); *Diamond v. City of Mankato,* 89 *Minn.* 48, 93 *N. W.* 911 (*Sup. Ct.* 1903); *Gjellefald v. Hunt,* 202 *Iowa* 212, 210 *N. W.* 122 (*Sup. Ct.* 1926); *City of Bemidji v. Ervin,* 204 *Minn.* 90, 282 *N. W.* 683 (*Sup. Ct.* 1938). The law permits no private negotiations with an individual bidder, and no material alteration in his bid for the purpose of consummating a contract. *Chippewa Bridge Co. v. City of Durand,* 122 *Wis.* 85, 99 *N. W.* 603 (*Sup. Ct.* 1904).

The reason for the strict rule is obvious. Any other result would emasculate the whole system of competitive bidding on public projects and defeat the purpose which the Legislature intended to safeguard. As the Supreme Court of Alabama said in *Inge v. Board of Public Works,* 135 *Ala.* 187, 33 *So.* 678 (*Sup. Ct.* 1903):

" 'To require the bids upon one basis, and award the contract upon another, would, in practical effect, be an abandonment of all bids.' * * * Any material departure, in the contract awarded, from the terms and conditions upon which the bidding is had, renders the contract, in a sense, a private one. To permit such in the awarding of public contracts by public officers would be to open wide the door for favoritism, and defeat the thing which the law intended to safeguard, in requiring the contracts to be let upon bids made on advertised specifications. It is unimportant whether the additional stipulation contained in the contract awarded to one who is not the lowest responsible bidder be in itself an advantage to the city or not. If it constitutes a material change, and therefore a departure from the basis of the bidding, and becomes an element or consideration in the determination of who is the lowest and best bidder, it will invalidate the contract entered into." 33 *So.,* at *p.* 682.

When the contract entered into represents a substantial departure from the proposal, it is of no consequence that the parties acted in good faith or that one or the other or both derived some benefit. If the forbidden act is in fact done, the contract is void without reference to the intent with which it was done; such result follows, as of course, in the wake of the transgression. *Diamond v. City of Mankato, supra,* 93 *N. W.,* at *p.* 913. Assertion by municipal officials, by way of justification of their action, that the method they chose to accomplish legitimate ends was better than the one provided by law and produced gain for the public body, can only be regarded as futile. *Chippewa Bridge Co. v. City of Durand, supra,* 99 *N. W.,* at *p.* 610. Plainly, the courts have concluded that in the field of public contracts it is too difficult to look into the minds and hearts of men for motives which are opposed to the taxpayers' interests, that the external symbols by which such motives

are indicated are too difficult to search out and evaluate. Consequently, they have espoused the doctrine that the legislative purpose can be effectuated only by an automatic condemnation of any such contract which is materially different from the bid.

Assuming as the premise of the majority that under the special circumstances of this case an open bid of the nature employed in this instance is statutorily permissible (but see, proposed revision of *N. J. S.* 40*A*:6–17 to 19 incl., *Report of County & Municipal Law Revision Commission, March* 1961), what are the significance and the application of the principles just discussed? The Fornicola bid, made May 12, 1959, was $39,885 for a ten-year lease of the particular boardwalk store to be used "for sale of frozen desserts, ice cream, drinks (soft) and milk products." On May 26 a lease was executed in accordance with the bid authorizing use of the premises "as a store for the sale of frozen desserts, ice cream, drinks (soft) and milk products, and for no other purpose whatsoever * * *." Very shortly thereafter the agreement was altered by mutual consent on two occasions. The amended lease in its final form withdrew the right to sell frozen custard and conferred authority to engage in much broader operations. More particularly, the present scope of use is for sale of "ice cream, drinks (soft), milk products, cold sandwich platters, cakes, pies, and coffee, frankfurters and hamburgers, and for no other purpose whatsoever." The extent of the change is indicated by signs on the store describing it as a "luncheonette" (instead of a milk bar) and

"Ducky's Sea Breeze Soda Shop, Luncheonette, Fountain Service, Sodas, Sundaes, Ice Cream, Franks, Hamburgers, Breakfast, Milk Shakes, Soups, Sandwiches, Salads, Fresh Fruit Drinks, Orangeade, Lemonade, Limeade, Tea, Coffee, Lunch."

If, instead of the open bid tactic, the city had advertised for bids to lease the store in question for the purpose of selling "frozen desserts, ice cream, drinks (soft) and milk products," and Fornicola had offered $39,885 for such a ten-

year lease, under the legal principles discussed above would not the authority to let necessarily have been limited to such purposes? If a lease had been entered into immediately which omitted frozen custard and included instead cold sandwich platters, cakes, pies, coffee, frankfurters and hamburgers, would not the modification have constituted a material departure from the terms of the public advertisement for bids? To me, an affirmative answer is the only one that can reasonably be given. Such a contract, with its materially altered subject matter, being in conflict with the bid, would have to be declared void as violative of the mandate for open, competitive bidding; it would not be the contract bid for. And it would make no difference in such case that Fornicola happened to be the only bidder. See *City of Bemidji v. Ervin, supra; Le Tourneau v. Hugo,* 90 *Minn.* 420, 97 *N. W.* 115 (*Sup. Ct.* 1903).

I am unable to perceive any distinction between the hypothetical situation just described and the present case. Compare, *Asbury Park Press v. City of Asbury Park,* 19 *N. J.* 183 (1955). The fact that the two differences between the bid and the final form of the lease occurred a short time after the original document was executed, rather than as part of the original, does not justify a different conclusion as to legality. The lease assailed is not the one bid for; the alterations in the bid are not inconsequential or mere irregularities, or matters of detail; they are manifestly substantial, and so opposed to the policy of the compulsory bidding statute. Thus, the only course that was open to the city to accomplish a letting of the type now allegedly covered by Fornicola's lease was readvertisement for bids.

The amendments to the lease being void, I vote to modify the judgment of the Appellate Division to conform with this view.

PROCTOR, J. (dissenting in part). I agree with the majority that Fornicola's lease with the city was valid when made. I also agree, from the record before us, that the

city could properly agree with Fornicola to alter the lease by deleting certain items to be sold, namely, frozen products, and substituting others, namely, cold sandwich platters, cakes, pies and coffee. There is no suggestion the city could have induced Fornicola to give up the sale of frozen products without permitting him to sell the substituted items. It seems to me there was good-faith bargaining to further the interests of the city, *i. e.,* to augment its income and increase pavilion activity by leasing a vacant store. Under these circumstances I cannot say that this alteration of the lease violated the spirit or the letter of the public bidding statutes. But that part of the amended lease permitting the sale of frankfurters and hamburgers is quite another matter. No authority need be cited to establish the proposition that these "delicacies" are highly popular with seashore resort visitors. There was no *quid pro quo* for this profitable gain by Fornicola. The later inclusion permitting the sale of frankfurters and hamburgers obviously increased the attractiveness and value of the lease. Fornicola never bargained for such inclusion at the time of the original lease, nor was such inclusion bargained for when he gave up his right to sell frozen products in return for the right to sell cold sandwich platters, cakes, pies and coffee. The amendment of the lease as relates to frankfurters and hamburgers was a gratuity by the city to Fornicola of a valuable thing, *i. e.,* permission to expand his business beyond the terms bargained for. To me this action seems to circumvent the public bidding statutes, *N. J. S. A.* 40:61–36 to 40, which prevent the city from leasing out its buildings except to the highest responsible bidder after proper advertising. See *Asbury Park Press v. City of Asbury Park,* 19 *N. J.* 183 (1955). The fact that the city suggested Fornicola handle frankfurters and hamburgers to meet the convenience of visitors and city employees has no significance. The city cannot disregard the goal of the public bidding statutes when it seeks to enlarge the scope of a lease. We are concerned here with a valuable addition to the terms of the original

lease, not a burdensome favor Fornicola might render the city. All boardwalk refreshment stands are for the convenience of bathers and strollers. Such convenience is translated into the lessee's profits and is the very reason why his lease becomes more valuable when he is permitted to expand the scope of his operations.

I would uphold the original lease as amended to permit Fornicola to sell cold sandwich platters, cakes, pies and coffee in lieu of frozen products. I would invalidate that part of the amendment which permits Fornicola to sell frankfurters and hamburgers.

HALL, J. (dissenting). While I agree with the dissenting opinions of Justices FRANCIS and PROCTOR, I would go further and hold the Fornicola lease to be void as did the Appellate Division. 65 *N. J. Super.* 104 (1961).

The majority appears to me to hold that a municipality like Asbury Park owning its beachfront and pavilions, stores and other buildings thereon, which are designed to remain in public ownership perpetually and to be rented for commercial operation continuously, may lease its properties in compliance with the applicable bidding statute, *R. S.* 40:61–36 *et seq.* in two ways. First, it may specify the permissible use and invite bids for that purpose only. Considering the overall circumstances I see no legal objection to this method, provided the limitation is reasonable, consistent with a fair plan for proper development and use of the entire area in the highest public interest and the lease is, of course, awarded to the highest responsible bidder. Secondly, the majority says it is valid to advertise for open bids, as here, merely with the specification the use will be "suggested by the bidder, subject to the approval of City Council." Implicit in the holding is that the governing body need not award the lease to the highest bidder for any use but only to the party naming the highest price for that offered use decided, after the bids are opened, to be the one which, will be accepted and exclusively permitted.

This conclusion, to me, affords the means of destroying the vitals of this court's prior decisions in the two cases of *Asbury Park Press v. City of Asbury Park,* 19 *N. J.* 183 (1955) and 23 *N. J.* 50 (1956). The first of these decisions held the legislative intent to require advertising for bids on uniform specifications and award to the highest bidder in the case of beachfront property, and the second, that municipal action in this regard must fairly comport with the purpose and spirit of the bidding laws. These conclusions are bottomed on the fundamental propositions that, where the Legislature so directs, municipalities may not deal with their real property as would a private owner, that favoritism and the possible image of favoritism are to be strictly safeguarded against and that the maximum revenue, consistent with the over-all public interest and purpose, shall be obtained. Entire good faith in a particular transaction affords no excuse to vary from the statutory mandate.

The method of bidding here sanctioned obviously does not conform to these principles, as the Appellate Division pointed out. I cannot conceive that the language in *R. S.* 40:61–37, permitting the governing body to specify "terms and conditions" of the leasing, was intended to allow the result here reached. The policy behind the strict legislation is a strong and salutary one. If it is thought not to be workable for practical business reasons, variation can only be permitted by the Legislature. Courts should not undertake to authorize departure from clear legislative policy and provisions.

I would affirm the judgment of the Appellate Division.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, SCHETTINO and HANEMAN—4.

*For affirmance*—Justices FRANCIS and HALL—2.

*For modification*—Justice PROCTOR—1.